# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**RANDY POTTER**                                                              **PETITIONER**

**V.**                                     **CIVIL ACTION NO. 5:08cv290-DCB-MTP**

**BRUCE PEARSON, Warden**                                     **RESPONDENT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition [1] of Randy Potter for a Writ of Habeas Corpus, filed under 28 U.S.C. § 2241. Having considered the Petition, the Answer [11], Petitioner's Reply [12], all matters made a part of the record in this case, as well as applicable law, the undersigned is of the opinion that the Petition should be denied and dismissed with prejudice.

## Background

Petitioner Randy Potter was convicted in the United States District Court for the Southern District of Florida of Possession of a Firearm by a Convicted Felon and on December 21, 1995, he was sentenced to a 245-month term of imprisonment. Petitioner is incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City") and is projected to be released on November 20, 2013. *See* Exh. 1 to Answer.

On December 30, 2007, a random urine sample was taken from Petitioner for drug testing by Senior Officer Specialist K. Mathis. After Petitioner began urinating in the collection cup, he dropped it in the toilet and told Officer Mathis that he could not use it as his sample. *See* Petition & Attachments; Exhs. 2, 3, 5 & 7 to Answer. Because Officer Mathis thought that Petitioner had dropped it on purpose, he contacted Lieutenant Bobby R. Edwards, who advised him that Petitioner should be given a new cup so that he could provide another sample. *See* Exhs. 3 & 7 to

Answer. Lieutenant Edwards watched Officer Mathis give Petitioner a new cup. *See* Edwards Decl. (Exh. 7). Petitioner provided the urine sample and then signed a Chain of Custody form certifying that he provided the urine sample, that the specimen was sealed in his presence and that the information on the form and label were correct. *See* Exh. 3 to Answer. In the instant Petition, Petitioner avers, however, that he was not given an opportunity to provide another urine sample, and that Lieutenant Edwards and Officer Mathis determined that the "tainted" sample that had fallen into the toilet was the one that should be sent to the laboratory.[1] *See* Petition [1] and Attachment A to Petition; *see also* Petitioner's Reply [12].

On January 3, 2008, the results came back showing that Petitioner's urine sample had tested positive for the presence of drugs - specifically, "THC metabolite" (*i.e.*, marijuana). *See* Exh. 2 to Answer. After medical staff confirmed that Petitioner was not taking any medication that could have caused a positive result, an Incident Report dated January 3, 2008 was issued, charging Petitioner with "use of any narcotic, or related paraphernalia not prescribed for the individual by the medical staff" (Code 112). *See id.* The Incident Report was delivered to Petitioner that day. Petitioner declined to make a statement to the investigator when he was interviewed. The investigator found that the charges were warranted and referred the Incident Report for further processing. *See id.*

A preliminary hearing was held by the Unit Discipline Committee ("UDC") on January 9, 2008. Petitioner told the UDC that the specimen jar had fallen into the toilet, but he did not argue that he had been denied the opportunity to provide another sample. *See id.* The Incident Report was referred to the Discipline Hearing Officer ("DHO") for further hearing. *See id.* Petitioner

---

[1] According to Petitioner, other inmates had used the toilet to provide urine samples prior to him, and Petitioner speculates that the toilet may not have been flushed prior to his turn. *See* Attachments A, B & C to Petition.

2

was given notice of his rights before the DHO, including his right to request witnesses and a staff representative. Petitioner did not request any witnesses, but he did request a staff representative. *See* Exhs. 4 & 4A to Answer.

The DHO hearing was held on January 23, 2008. Petitioner and his staff representative appeared. Petitioner stated that he understood his rights and was ready to proceed. Petitioner denied committing the offense and stated that he had no comment. Petitioner did not argue that his urine sample was tainted. Nor did Petitioner's staff representative present any evidence of a tainted sample. *See* Exh. 5 to Answer. In addition to the Incident Report, the DHO reviewed the supporting memorandum from medical staff, the laboratory report on the urine sample and the Chain of Custody for Drug Analysis form, which Petitioner had signed certifying that he provided the urine sample, that the specimen was sealed in his presence, and that the information on the form and the label was correct. *See id.*

The DHO concluded that Petitioner had committed the act as charged, and imposed the following sanctions: disallowance of 40 days' Good Conduct Time ("GCT"); 60 days of disciplinary segregation (suspended pending 180 days of clear conduct); loss of telephone privileges for one year; and loss of visitation privileges (all visits for one year, and family only for one year after that). *See id.* Petitioner was issued a copy of the DHO Report on January 30, 2008. Petitioner appealed the DHO's decision and the appeal was denied on August 19, 2008. *See* Attachment E to Petition.

In the instant Petition, Petitioner asserts that he was denied due process because he was not given the opportunity to provide an "untainted" urine sample, and because a "tainted" sample was submitted to the laboratory. Petitioner asks the court to order that the Incident Report be expunged and his GCT restored. *See* Petition [1].

Analysis

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that disallowance of GCT, which will result in an inmate's confinement being extended, requires due process.[2] However, the Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Id.* at 556. Thus, the Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker, and also receives: 1) at least 24 hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70.

---

[2] With respect to the other sanctions imposed on Petitioner (loss of visitation and telephone privileges and disciplinary segregation), no process was due. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's telephone or visitation privileges "provide no basis for a claim of the denial of constitutional rights." *Palmisano v. BOP*, 258 Fed. Appx. 646, at * 2 (5th Cir. Dec. 11, 2007) (citations omitted); *see also Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (30 day restriction on commissary privileges did not implicate due process); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (rejecting claim that confinement in administrative segregation violated a prisoner's due process rights)).

The record in this case reveals that Petitioner clearly received all of these protections. Petitioner received at least 24 hours advance written notice of the charges before the DHO hearing was held. Petitioner attended the hearing and was given the opportunity to present testimony from witnesses (although he chose not to), and he made an oral statement in his defense. A staff representative attended the hearing, as requested by Petitioner.[3] The DHO Report sets out the evidence upon which his finding was made and his reasons for imposing the sanctions. *See* Exhs. 2 & 5 to Answer.

Moreover, in order for a prison disciplinary decision to pass constitutional muster, there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion

---

[3] Apparently, Petitioner had initially requested that Lieutenant Edwards serve as his staff representative, but because he was the Operations Lieutenant on duty when Petitioner provided the urine sample, Lieutenant Edwards felt that he could not serve as Petitioner's staff representative. *See* Exh. 5 to Answer. Petitioner argues that Lieutenant Edwards' refusal to serve as his representative violated his constitutional rights. *See* Reply [12]. However, Petitioner points to no authority to support the proposition that he has the constitutional right to a choice of staff representative. *See Turner v. Miles*, 2006 WL 318817, at * 3 (E.D. Tex. Feb. 9, 2006) ("Petitioner has not cited any judicial decision or institutional regulation which would entitle him to have the staff representative of his choice."); *Tewell v. Outlaw*, 2008 WL 4216423, at * 4 (E.D. Ark. Sept. 12, 2008); *see also Hammock v. Nash*, 2005 WL 2562295, at * 4 (M.D. Pa. 2005) (noting that *Wolff* "does not mandate that a prisoner has the right to be afforded a staff representative of his choosing."). Indeed, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. *See Tewell*, 2008 WL 4216423, at * 4 (citing *Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996)). Rather, due process requires only that inmates be provided with a staff representative where they are illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Id.* (citing *Wolff*, 418 U.S. at 570). Petitioner does not allege that he is illiterate (and his pleadings belie such an allegation). Nor are the issues in this case complex.

5

reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld.[4] *Id.* at 456.

Here, the Incident Report and supporting documentation demonstrate that a urine sample taken from Petitioner tested positive for the presence of drugs. This is "some evidence" that Petitioner committed the offense. *See*, *e.g.*, *Davenport v. Anderson*, 132 F.3d 1456, at * 1 (5th Cir. Dec. 2, 1997) (*per curiam*) (citing *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986)) (positive drug urinalysis result constituted "some evidence" on which to find prisoner guilty of unauthorized possession of marijuana); *see also Johnson v. Hanks*, 52 Fed. Appx. 283, 285 (7th Cir. Nov. 22, 2002) (urine test result qualified as "some evidence" supporting prison discipline finding that inmate had used drugs); *Easter v. Saffle*, 51 Fed. Appx. 286, 289 (10th Cir. Nov. 14, 2002) ("A single urinalysis amounts to 'some evidence' and thus satisfies due process."); *Peranzo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1988) (*per curiam*) (positive drug test result is sufficient evidence under *Hill* to warrant prison discipline).

Petitioner argues that the urine sample was tainted. However, beyond Petitioner's bald allegation, no evidence was presented to the DHO or to this court that the sample was, in fact, tainted. This argument is mere speculation and is insufficient to call into question the validity of the urine test result. *See*, *e.g.*, *Johnson*, 52 Fed. Appx. at 285 ("Speculation is not enough - we must have 'some affirmative indication that a mistake may have been made' before we can conclude that test results fail to qualify as 'some evidence' supporting the board's decision.") (citation omitted).

---

[4] "The logic behind the Supreme Court's *Hill* standard is that prison disciplinary hearings are set in a uniquely charged atmosphere, in which prison administrators must act swiftly - even if such efficiency is attained by sacrificing the due process protections guaranteed in other settings." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001) (citation omitted).

Moreover, Petitioner did not raise this claim before the UDC or DHO. Indeed, at the DHO hearing, Petitioner declined to comment beyond simply denying his guilt, and his staff representative indicated that she had no comments either.[5] *See* Exh. 5 to Answer. Although the DHO was informed that the urine specimen had been dropped in the toilet,[6] Petitioner made no claim that the sample provided to the laboratory was tainted, nor did he refute Lieutenant Edwards' statement that Officer Mathis was instructed to provide Petitioner with a new specimen bottle for a new urine sample. *See id.* Accordingly, Petitioner cannot rely on this claim here. *See Hamilton v. O'Leary*, 976 F.2d 341, 347 (7th Cir. 1992) ("In his complaint, Hamilton makes allegations which, if true, would bring his guilt into serious doubt.[7] But, although he had the opportunity, Hamilton never presented these claims to the Adjustment Committee–and that is the proper forum for resolving such evidentiary disputes. Hamilton cannot

---

[5] Petitioner's argument that he was "entitled to remain silient [sic] pursuant to his Constitutional rights of due process" and that he did not have "to make mention of the tainted sample in defense of the [charge]" is simply without merit. 28 C.F.R. § 541.14(b)(2) provides in relevant part that an "inmate's silence may be used to draw an adverse inference against the inmate at any stage of the institutional disciplinary process." The United States Supreme Court has held that drawing an adverse influence from an inmate's silence during disciplinary proceedings does not, on its face, violate the Fifth Amendment's privilege against self-incrimination. *See Baxter v. Palmigiano*, 425 U.S. 308, 316-20 (1976); *see also Stephens v. Hickey*, 2008 WL 205335, at * 5 n.6 (S.D. Ga. Jan. 23, 2008) (finding "some evidence" where DHO relied upon, *inter alia*, petitioner's "repeated refusal to defend himself against the drug charge throughout the investigation and resulting disciplinary proceedings).

[6] Similarly, Petitioner informed the UDC that the specimen jar had fallen into the toilet, but did not aver that the specimen provided to the laboratory was tainted. *See* Exh. 2 to Answer.

[7] In *Hamilton*, the petitioner was found guilty by the disciplinary committee of possession of homemade weapons based upon a constructive possession theory. Hamilton argued - for the first time in federal court - that there was not "some evidence" because the weapons were found in a vent to which 32 inmates had access. However, Hamilton had not told the disciplinary committee this fact; the only evidence before the committee was Hamilton's testimony that he had no knowledge of the weapons and that the weapons were found in the vent. The court rejected Hamilton's argument that it should infer that the committee was aware of the significance of the vent since the committee members worked at the prison. *See Hamilton*, 967 F.2d at 345-46.

relitigate his guilt in federal court. Our job is simply to ensure that there was 'some evidence' to support the revocation of good time credits).

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Randy Potter's Petition [1] for a Writ of Habeas Corpus be denied and dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 25th of September, 2009.

s/Michael T. Parker
United States Magistrate Judge