IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RANDY POTTER                                                    PETITIONER

VS.                          CIVIL ACTION NO. 5:08-cv-290(DCB)(MTP)

BRUCE PEARSON                                                   RESPONDENT

ORDER ADOPTING REPORT AND RECOMMENDATION

This cause is before the Court on the Report and Recommendation of Magistrate Judge Michael T. Parker **(docket entry 16)**, and on the petitioner Randy Potter ("Potter")'s objections thereto. Having carefully considered the report and recommendations of the magistrate judge and the petitioner's objections, and being fully advised in the premises, the Court finds as follows:

In his 28 U.S.C. § 2241 petition challenging a prison disciplinary proceeding, Potter claims that his due process rights were violated on the following basis:

> [O]n December 30, 2007 BOP staff, correctional Officer Mathis, did knowingly introduced [sic] a "tainted" urine sample to the laboratory in which he observed and was advised had fallen into the toilet, prior to being sealed for transportation, without providing Petitioner Potter another specimen jar to take a good sample, an untainted sample. This was an abuse of discretion by this prison employee, Officer Mathis, assigned to take the samples, which resulted in the incident report.

Petition, p. 4. He seeks to have the incident report rescinded and quashed from his Inmate Central File. Petition, p. 5.

In his Report and Recommendation, Magistrate Judge Parker

finds that the records of Potter's disciplinary hearings reveal the following: On December 30, 2007, Senior Officer Specialist K. Mathis took a random urine sample from the petitioner for drug testing. After Potter began urinating in the collection cup, he dropped it in the toilet and told Officer Mathis that he could not use it as his sample. Because Officer Mathis thought that Potter had intentionally dropped the cup, he contacted Lieutenant Bobby R. Edwards, who advised him that Potter should be given a new cup so that he could provide another sample. Lieutenant Edwards observed Officer Mathis give Potter a new cup. Potter provided the urine sample and signed a Chain of Custody form certifying that he provided the urine sample, that the specimen was sealed in his presence, and that the information on the form and label were correct. Report and Recommendation, pp. 1-2.

On January 3, 2008, the results came back showing that Potter's urine sample had tested positive for the presence of drugs. An Incident Report was subsequently issued. The petitioner declined to make a statement to the investigator when he was interviewed. The investigator found that the charges were warranted and referred the Incident Report for further processing. At a preliminary hearing held by the Unit Discipline Committee ("UDC"), Potter told the UDC that the specimen jar had fallen into the toilet, but he did not argue that he had been denied the opportunity to provide another sample. The Incident Report was

then referred to the Discipline Hearing Officer ("DHO") for further hearing. Potter was given notice of his rights before the DHO, including his right to request witnesses and a staff representative. At his DHO hearing, Potter did not argue that his urine sample was tainted, nor did his staff representative present any evidence of a tainted sample. The DHO reviewed the supporting memorandum from medical staff, the laboratory report on the urine sample and the Chain of Custody for Drug Analysis form. The DHO concluded that Potter had committed the act as charged, and imposed the following sanctions: disallowance of 40 days' Good Conduct Time ("GCT"); 60 days of disciplinary segregation (suspended pending 180 days of clear conduct); loss of telephone privileges for one year; and loss of visitation privileges (all visits for one year, and family only for one year after that).

The Administrative Procedures Act ("APA") "Scope of Review" provides the following:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall –
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be –
>
>    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
>    (B) contrary to constitutional right, power, privilege, or immunity;

> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to [5 U.S.C. §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706(2). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). In general, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973).

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

Lorion, 470 U.S. at 744.

In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), the Supreme Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." <u>Id</u>. at 556. The Supreme Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker, and also receives: (1) at least 24 hours advance written notice of the charges; (2) an opportunity to present documentary evidence and testimony from witnesses; (3) help from other inmates or staff, if needed; and (4) a written statement of the evidence relied on and the reason for the disciplinary action. <u>Id</u>. at 564-70.

Magistrate Judge Parker finds, based on the existing record, that Potter received all of these protections. In addition, he finds that there is evidence in the record supporting the decision of the disciplinary board. See <u>Superintendent, Massachusetts Correctional Institution v. Hill</u>, 472 U.S. 445, 455 (1985) (in order for prison disciplinary decision to pass constitutional muster, there merely must be "some evidence" to show that the inmate committed the offense in question). Because the Incident Report and supporting documentation demonstrate that a urine sample taken from Petitioner tested positive for the presence of drugs, Magistrate Judge Parker finds that the required due process was

provided to Potter and that no violation of his constitutional rights occurred.

The petitioner avers in his present petition that he was not given an opportunity to provide another urine sample, and that Lieutenant Edwards and Officer Mathis determined that the "tainted" sample that had fallen into the toilet was the one that should be sent to the laboratory. Potter did not raise this claim before the UDC or DHO. At the DHO hearing, he declined to comment beyond simply denying his guilt, and his staff representative indicated that she had no comments either. Although the DHO was informed that the urine specimen had been dropped in the toilet, Potter made no claim that the sample provided to the laboratory was tainted, nor did he refute Lieutenant Edwards' statement that Officer Mathis was instructed to provide him a new specimen bottle for a new urine sample.

Accordingly, the petitioner is not allowed to bring this claim in the present proceeding. In Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992), the Seventh Circuit Court of Appeals held:

> In his complaint, Hamilton makes allegations which, if true, would bring his guilt into serious doubt. But, although he had the opportunity, Hamilton never presented these claims to the Adjustment Committee – and that is the proper forum for resolving such evidentiary disputes. Hamilton cannot relitigate his guilt in federal court. Our job is simply to ensure that there was "some evidence" to support the revocation of good time credits.

Id. at 347.

In addition, the matters argued in the petitioner's objections

6

to the Report and Recommendation were not previously raised, and are without merit. The Report and Recommendation shall therefore be adopted in its entirety, and the petition dismissed with prejudice. Accordingly,

IT IS HEREBY ORDERED that the Report and Recommendation of United States Magistrate Judge Michael T. Parker **(docket entry 16)** is hereby adopted as the finding of this Court, and the petitioner's objections thereto are denied;

FURTHER ORDERED that the 28 U.S.C. § 2241 petition is dismissed. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure, dismissing this action with prejudice.

SO ORDERED, this the 28th day of June, 2010.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE